**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION**

| | |
|---|---|
| **MARY WILSON,** ) | CIVIL ACTION NO. <u>2:17-cv-01559-PMD</u>-JDA |
| **Plaintiff** ) | |
| ) | **COMPLAINT** |
| **v.** ) | |
| ) | **Jury Trial Demanded** |
| **ENTERPRISE BANK OF SOUTH** ) | |
| **CAROLINA, DAVID JOHNS, and** ) | |
| **BERNARD DICKERSON,** ) | |
| ) | |
| **Defendants.** ) | |
| _____ ) | |

**<u>INTRODUCTION</u>**

1. Plaintiff brings this action under Title VII of the Civil Rights Act of 1964, as amended, 42

   U.S.C. §§2000 *et seq*. (hereinafter Title VII) to redress the unlawful and retaliatory actions of

   the Defendant.

**<u>PARTIES</u>**

2. The Plaintiff is a female citizen and resident of Bamberg County, South Carolina.

3. The Defendant Enterprise Bank of South Carolina is a South Carolina corporation who

   operates businesses in South Carolina, including the Bamberg County bank where the

   Plaintiff was employed. Defendant is an employer engaged in an industry affecting

   commerce and at all times relevant herein has employed more than fifteen employees, all

   within the meaning of the Title VII, 42 U.S.C. § 2000e-(b).

1

4.  Upon information and belief, Defendant David Johns is a resident of Colleton County, South Carolina, and, at all times relevant herein, served and continues to serve as Senior Vice-President of the Defendant Bank, working from its Ehrhardt, South Carolina location.

5.  Defendant Bernard Dickerson is a resident of Bamberg County, South Carolina and was employed by the Defendant Bank as a custodian at the Ehrhardt location.

## JURISDICTION AND VENUE

6.  Jurisdiction of this Court arises under 42 U.S.C. §2000e-2 and 28 U.S.C. §1331, which confers original jurisdiction of all civil actions arising under the laws of the United States. Plaintiff requests a trial by jury of all matters which may be submitted to a jury.

7.  Venue is proper under 28 U.S.C. §1391(b) and §1391(c) as Defendant Bank conducts business within this judicial district and the unlawful employment practices giving rise to this action also occurred within this judicial district.

## CONDITIONS PRECEDENT

8.  The Plaintiff timely filed an administrative charge with the Equal Employment Opportunity Commission (EEOC), the Notice of Right to Sue was received by the Plaintiff on or about May 4, 2017 and this Complaint has been timely filed within the ninety days of said receipt by Plaintiff.

## FACTUAL BACKGROUND

9.  The Plaintiff began working for the Defendant Enterprise Bank at its main location in Ehrhardt, South Carolina on June 29, 2015.  She was employed as a teller at this location until she left employment in September of 2016. At all times, Plaintiff performed her duties in a satisfactory manner.

2

10.  While employed at the Defendant Bank, the Plaintiff's immediate supervisor was Faye Polk. Also employed in a management capacity at the Ehrhardt location is Cara Thomas, who supervises employees in the proof department.

11.  In July of 2016, the Plaintiff attempted to exit the Bank through the designated side door of the building. She walked down the hallway toward the door alone, with no other person in sight.  Upon coming to the door and reaching up to unlock it, she felt a hand reach out and grab her breast from behind. Shocked speechless, she spun around to confront her attacker, Bernard Dickerson, a Bank employee who worked as a custodian. She ran from the building into the parking lot, got into her car and left the premises. Stunned by the boldness of this assault and perplexed as to where her assailant had suddenly appeared from, she did not report this incident to management that day. She did, however, discuss it with another Bank employee the following day.

12.  Several weeks later, on August 17, 2016, Defendant Dickerson again attacked the Plaintiff at the very same location. The Plaintiff was again walking down the hall toward the side door alone when Defendant Dickerson seemingly came out of nowhere, pushed her up against the door, and pinned her so that she could not move. He put his hands under her dress and groped her buttocks before she was able to free herself. Confronting him and yelling at him to never touch her again, she was able to free herself, flee the building and run to her car.

13.  Upon securing herself in her car in the parking lot, the Plaintiff drove across the street, she called back into the Bank and asked to speak with Cara Thomas. Hysterical, she told Ms. Thomas that Defendant Dickerson had just sexually assaulted her, that she wanted something done about it and that she was willing to come back into the Bank to tell her what happened.

3

14. Ms. Thomas told the Plaintiff that she would speak with Mr. Johns and that they would talk to her the next morning. Upon information and belief, neither Ms. Thomas nor Mr. Johns, nor any other Bank employee or agent advised Mr. Dickerson not to come to work nor to refrain from coming onto Bank property the next day.

15.  As a result of the Defendant Bank's glaring and inexplicable failure to instruct Defendant Dickerson to remain off Bank property, the Plaintiff was accosted the very next morning, August 18, in the Bank parking lot by Mr. Dickerson, who was ostensibly performing outdoor landscaping maintenance.  Defendant Dickerson confronted her, told her he was sorry and twice stated that, "I shouldn't have done that to you."

16.  Upon this confrontation, the Plaintiff began crying, screaming at the Defendant Dickerson and frantically ringing the bell for an employee to let her in the door. After entering the Bank, she retreated to the restroom to compose herself.  After doing so, she went to Ms. Thomas' office to report this further incident.

17.  During the meeting in Ms. Thomas' office, the Plaintiff described what had happened the evening before and that morning. Ms. Thomas told the Plaintiff that she was not the first employee to bring a similar accusation against Defendant Dickerson at the Bank.

18.  Despite his documented assault of the Plaintiff the evening before, his confrontation with the Plaintiff in the parking lot that morning and the ensuing, demonstrable distress these incidents caused the Plaintiff, Defendant Dickerson was permitted to work that evening, August 18, as if nothing out of the ordinary had occurred.

19.  Upon information and belief, no Bank employee or agent advised Defendant Dickerson to refrain from coming onto Bank property the next day, August 19, and he appeared this day as well. He came into the lobby where the Plaintiff was working during the day, necessitating

the Plaintiff's retreat to the restroom. Moreover, he was in the parking lot at the end of the day when she left and walked to her car, accompanied by Victoria Creech and Ms. Thomas for her protection.  Upon information and belief, no Bank employee requested that he leave the premises this day.

20.  On Saturday, August 20, the Plaintiff attended an Ehrhardt town parade, only to look up twice and find Defendant Dickerson glaring at her from very short distances. As she ordered food at the food truck, she became concerned that he was approaching her.  She quickly left the food truck, ran to her car and locked the doors. This encounter left her further distressed and frightened.

21.  On Sunday, August 21, the Plaintiff spoke with her supervisor, Faye Polk, who had not been at work the preceding week, and told her what had happened at work and the day before at the town parade. She also told Ms. Polk that she was frightened and upset that Defendant Dickerson continued to come onto Bank property and into the Bank lobby where she worked. Ms. Polk expressed surprise that no one from the Bank had contacted her to advise her of the incident; however, she told the Plaintiff that the assault by Defendant Dickerson did not surprise her.

22.  On Monday, August 22, 2017, the Plaintiff met with Susan Crocker, who was introduced as a human resources consultant employed by the Bank to investigate her claims against Defendant Dickerson. Also present was Gene Varn, Vice-President of the Defendant Bank and son of the Bank's President and CEO, W. H. Varn.

23. Among other matters discussed during this meeting, the Plaintiff described the prior attack by Defendant Dickerson in July to Ms. Crocker and Mr. Varn. In an effort to convey why she was so distraught about the assaults and the subsequent behavior of Defendant Dickerson,

she also confided in Ms. Crocker and Mr. Varn about personal childhood experiences that heightened her vulnerability to these attacks and increased the significant emotional distress that she was suffering. She explained that she was a survivor of years' long incest and sexual abuse at the hands of family members and others. She further explained that the assaults had revived these very painful memories, causing great emotional distress to her, as well as physical problems. Ms. Crocker promised to investigate her allegations and discouraged her from filing criminal charges against Defendant Dickerson.

24. Later that day, Ms. Wilson overheard Defendant Dickerson walking down the hall in the copy room/break room area, lamenting that he thought he was going to be terminated. Upon hearing the Defendant Dickerson's remark, Defendant Johns responded to him reassuringly by saying, "And I don't agree with it." Extremely upset by Defendant Johns' callous reaction to the assaults she suffered, contrasted with the comforting remark made directly to her assailant, the Plaintiff reported this remark to her supervisor, Ms. Polk.

25. The Plaintiff met with Ms. Crocker again in the afternoon of August 22, and was advised that Defendant Dickerson no longer worked at the Bank. Ms. Crocker also told the Plaintiff that he was no longer allowed to come into the Bank. The Plaintiff thanked Ms. Crocker and expressed how happy she was that she would not have to work in fear of him coming back into the Bank lobby.

26. Comforted by Ms. Crocker's assurances, the first and only such assurances she received from any employee or representative of her employer, the Plaintiff was therefore astonished to receive an afternoon email from Gene Varn, regarding the Defendant Dickerson's disassociation from the Bank. Echoing the insensitive and recalcitrant attitude of Defendant Johns, Mr. Varn's email, directed solely to her, not only thanked Defendant Dickerson for his

6

years of service, but wished him well in the future. The warm feelings and good wishes that Mr. Varn and Defendant Johns expressed toward an employee who had sexually assaulted the Plaintiff foreshadowed later similarly outrageous conduct by the Defendant Bank.

27.  Despite the assurances of Ms. Crocker that Defendant Dickerson would not be frightening and upsetting her by coming into the Bank lobby after August 22, he continued to come onto Bank's premises and into the Bank lobby numerous times after that date.

28.  Upon being warned of Defendant Dickerson's approach by her co-workers, when feasible, the Plaintiff was forced to rush to the women's restroom where she could hide from him.  On one occasion, the Plaintiff returned from her lunch break to find Defendant Dickerson sitting in the teller area behind the customer gate, an encounter which compelled her to retreat to the restroom. On several occasions, the Plaintiff was unable to avoid visual contact with her assailant before fleeing the small Bank lobby.

29.  Living in constant fear that she would closely encounter her assailant on one of his many visits into the Bank, the Plaintiff complained about his presence to Bank management, specifically to Ms. Thomas and to Ms. Polk. The Plaintiff told them how upsetting his unwelcomed presence was, a fact that they were easily able to observe. Her complaints to Ms. Thomas, however, were met with the refrain that Defendant Dickerson was a customer, and because he was a customer, that she would not prevent his coming into the Bank. Thus, although Ms. Crocker had communicated her advice to the Defendant's employees that Defendant Dickerson not be allowed to re-enter the Bank where his victim worked, the Defendant Bank deliberately chose to disregard this advice from its human resources professional.

30. Defendant Bank's deliberate actions in permitting, authorizing and ratifying the continued, habitual visits of the Plaintiff's assailant into the Bank, despite Defendant's knowledge of the impact on the Plaintiff, created an intolerable working environment that resulted in significant emotional distress to the Plaintiff. As a result, she could no longer function in her position as a teller for the Defendant and was compelled to take medical leave from her employment.

31. Both before and after the Plaintiff's left her employment, Defendant Dickerson proceeded to drive by the Plaintiff's house on a frequent basis, slowing down so that she and/or her neighbors would observe his actions. The Plaintiff lives alone and became increasingly frightened about this behavior. After the assaults but prior to taking medical leave, she consulted with Chad Dilling, the Chief of Police of Ehrhardt. Chief Dilling spoke to Defendant Dickerson and strongly suggested that he stay away from the Bank so that no further action would be taken by the Plaintiff, and further advised him not to drive by the Plaintiff's house. After these warnings went unheeded, Chief Dilling recommended to the Plaintiff that she seek a restraining order in magistrate court preventing assailant Dickerson from any contact with her.

32. Acting upon the advice of Chief Dilling, the Plaintiff's subsequent request for a restraining order was heard by Magistrate Judge Edward Freeman on November 10, 2016. Much to Plaintiff's shock and dismay, Ms. Thomas and Mr. Johns appeared at the hearing on behalf of Defendant Dickerson and testified to his good character. Ms. Thomas testified that there was no sexual assault, but that Defendant Dickerson had "accidentally bumped into" the Plaintiff as he was coming out of the janitor's closet. Defendant Johns testified that Defendant Dickerson was a trusted employee who escorted female employees to their cars after banking

8

hours. Given their knowledge that this employee had sexually assaulted the Plaintiff at least once on their premises, a fact which was confirmed by videotape, that they had terminated him for this reason, and that this same employee had similarly conducted himself in a predatory manner toward other female employee(s), their opposition to the Plaintiff's request for a restraining order was simply outrageous.

33.  Moreover, such conduct by Ms. Thomas and Defendant Johns was retaliatory, abusive, and intentionally calculated to inflict further serious emotional harm upon the Plaintiff for daring to expose the sexually predatory behavior of their employee, forcing them, against their inclinations, to terminate his long-term service.

34.  As a result of the false representations to the Magistrate by the Defendant Bank's manager and officer that the Plaintiff was not assaulted and that the Defendant Dickerson was a trusted employee of good moral character, the Magistrate Judge denied the Plaintiff's motion for a restraining order that would have prevented her assailant from stalking her. As a result, Defendant Dickerson continues this behavior to this day, repeatedly.

35.  The aforesaid conduct of the Defendants, including the false representations by Defendant Bank's officer and manager, were intentionally calculated to inflict or performed with reasonable certainty that such conduct would inflict severe emotional distress upon the Plaintiff.  As a direct result of this and other conduct of the Defendants alleged herein, the Plaintiff has experienced such extreme distress that she has become depressed, experiences significant anxiety and panic attacks, and has been diagnosed with post-traumatic stress disorder, panic disorder with agoraphobia and major depressive disorder.

## FIRST CAUSE OF ACTION:  TITLE VII

### Sex Discrimination/Sexual Harassment as to Defendant Bank

36.   The Plaintiff re-alleges and incorporates each and every allegation set forth above.

37.   Defendant is an employer subject to Title VII of the Civil Rights Act of 1964, as amended in 1991. The Plaintiff is a member of a protected group on the basis of her sex and has been discriminated against due to her sex in violation of Title VII.

38.   During her employment with the Defendant Bank, the Plaintiff was subject to two physical assaults by its employee, Defendant Dickerson. The physical assaults upon the Plaintiff were unwelcome, uninvited and non-consensual, and were visited upon her because of her sex.  They were severe in nature, altered the terms and conditions of her employment, and created a hostile working environment, thus constituting actionable sexual harassment under Title VII.

39.   The conduct of its employee, Defendant Dickerson, may be properly imputed to the Defendant Bank under the facts of this case. The Defendant Bank had a duty to take adequate steps to prevent any such sexually harassing conduct because of its admitted knowledge of prior similar conduct by the offending employee, which it either ignored and/or failed to address in a manner calculated to end such conduct. Such knowledge created a duty upon this Defendant to prevent subsequent acts of harassment toward other employees of the Defendant.

40.   The conduct of its employee, Defendant Dickerson, may also be properly imputed to the Defendant Bank because the Defendant, once apprised of the sexually harassing conduct, failed to take timely and appropriate remedial action. The Defendant failed to ensure that the harasser would not have access to the Defendant's property where he could further accost

and frighten the Plaintiff; failed to promptly and thoroughly investigate her complaint; failed to adequately apprise the Plaintiff of the results of the investigation; failed to prevent and actually permitted the harasser to continually return to its property, including inside its premises where Plaintiff worked; dismissed without concern her complaints regarding the impact of her harasser's frequent visits to the Bank and otherwise acted with total disregard to its obligations to provide a workplace free of harassment under the law.

41.   Due to the creation of the intolerable working environment, the Plaintiff was constructively discharged from her employment with the Defendant. As a result of her constructive discharge, the Plaintiff has suffered a loss of wages, benefits and employment opportunities.

42.   The actions and inactions of the Defendant Bank and its agents have caused, and continue to cause the Plaintiff severe emotional and mental distress, embarrassment, humiliation, pain and suffering, loss of enjoyment of life and other non-pecuniary losses.

43.   The Defendant's conduct constitutes malicious, reckless and/or intentional violations of Plaintiff's rights under Title VII, entitling her to punitive damages.

44.   Due to the Defendant's conduct, the Plaintiff is also entitled an injunction prohibiting the unlawful employment practices of the Defendant, and all such other relief as this Court deems allowable under law or equity, including her costs attorneys' fees.

## SECOND CAUSE OF ACTION:  TITLE VII

### Retaliation as to Defendant Bank

45.   The Plaintiff re-alleges and incorporates each and every allegation set forth above.

46.   As alleged above, the Plaintiff complained about the two sexual assaults by the Defendant Bank's employee to management employees and agents of the Defendant, including Cara Thomas, Vice-President Gene Varn, Faye Polk and Susan Crocker. The Plaintiff also

complained about the hostile working environment created by her assailant's continued, frequent visits to the Bank. These complaint(s) were made in good faith and constituted protected activity under Title VII.

47.  After her complaints concerning the sexual assaults, the Plaintiff was subjected to retaliatory actions by the Defendant Bank and its agents. These actions included the Defendant's deliberate disregard of the advice from its human resources professional that the Plaintiff's assailant be banned from entering the Bank where Plaintiff worked, the Defendant's cavalier insistence that Defendant Dickerson be permitted to enter the Bank at will because he was a customer, and its deliberate and intentional actions in permitting, authorizing and welcoming the continued visits of the Plaintiff's assailant, despite Defendant's knowledge of the adverse emotional impact on the Plaintiff.

48. These actions and inactions by the Defendant created and furthered an intolerable working environment in violation of Title VII that continued to result in significant emotional distress to the Plaintiff.  As a result, she could no longer function in her position as a teller for the Defendant and was compelled to take medical leave from her employment.

49. The Defendant's retaliatory conduct did not cease upon her medical leave of absence from employment in September of 2016. Rather, the Defendant's management sought to intimidate, abuse and further demean the Plaintiff by appearing at the hearing on her motion for a restraining order to oppose the restraining order, denying the assault had occurred and vouching for the character of the assailant, a former employee by this time.  Said behavior was calculated to ensure that the Plaintiff would never return to work at the Defendant's Bank by demonstrating that the Defendant's management employees would protect her assailant, would continue to permit him to come into the Bank at will and would not protect

her from further contact with him, despite the well-known and well-observed distress that his frequent appearances caused to the Plaintiff. Defendant Dickerson still frequents the Bank to this day and is welcomed on its premises, despite later assurances from Ms. Crocker that Defendant Dickerson would not be allowed on Bank premises.

50.  Due to the creation and furtherance of the intolerable working environment, the Plaintiff was compelled to take medical leave, and thereby was constructively discharged from her employment with the Defendant. As a result of her constructive discharge, the Plaintiff has suffered a loss of wages, benefits and employment opportunities.

51.  The actions and inactions of the Defendant and its agents have caused, and continue to cause the Plaintiff severe emotional and mental distress, embarrassment, humiliation, pain and suffering, loss of enjoyment of life and other non-pecuniary losses.

52.  Defendant's conduct constitutes malicious, reckless and/or intentional violations of Plaintiff's rights under Title VII, entitling her to punitive damages.

53.  Due to the Defendant's conduct, the Plaintiff is also entitled an injunction prohibiting the unlawful employment practices of the Defendant, and all such other relief as this Court deems allowable under law or equity, including her costs attorneys' fees.

## THIRD CAUSE OF ACTION

### Intentional Infliction of Emotional Distress as to all Defendants

54.  The Plaintiff re-alleges and incorporates each and every allegation set forth above.

55.  The conduct of the Defendant Bank, its officers, managers, employees and its former employee Bernard Dickerson was so extreme and outrageous that it exceeded all possible bounds of decency and must be regarded as atrocious and utterly intolerable in our civilized community. Defendant Bank, its officers, managers and employees were aware of the

danger presented by the Defendant Dickerson by virtue of at least one other incident acknowledged by the Bank, and upon information and belief, possibly others. Despite the Defendant Bank's knowledge, its officers and management, acting as alter egos of the Bank, retained him as an employee, placing him in proximity to female employees that allowed him to assault female employees, including the Plaintiff on two occasions.

56. The Defendant Bank knew that choosing not to adequately address the prior complaints and/or incidents against Defendant Dickerson and retaining him as an employee would enable him to continue preying on other employees, including the Plaintiff. The Plaintiff would never have been in contact with Defendant Dickerson had the Defendant Bank adequately responded to prior allegations/incidents of sexual abuse or harassment by him.

57. Upon learning of the sexual assaults upon the Plaintiff and receiving the recommendation of their human resources consultant to terminate Defendant Dickerson, Defendant Johns nevertheless sought to offer his sympathy to him, telling him that he did not agree with this decision. No such sympathy nor apology were ever forthcoming to the Plaintiff at any time by any Bank employee. Rather, the Defendant Bank sought to minimize Defendant Dickerson's actions and protect him and the Bank's reputation.

58. Further, upon learning of the sexual assaults and their devastating effect upon the Plaintiff for confidential reasons she had fully confided to the Bank's officers and agents, the Defendant Bank, its officers and managers acting as its alter egos, deliberately and intentionally ignored the advice of its human resource consultant that the Defendant Dickerson be prohibited from entering the Bank lobby where the Plaintiff worked. Instead, Bank officers and managers, acting as its alter egos, permitted the Plaintiff's assailant to

enter freely at will on numerous occasions, because he was a customer, albeit one that could have conducted his banking business at numerous other Bank locations in the area.

59.  The actions and conduct of the Defendant Bank, its officers, managers and employees acting as its alter egos intentionally and deliberately caused the Plaintiff severe emotional distress, or were performed with the reasonable certainty that such conduct would inflict severe emotional distress. The Defendant's officers, managers and agent/consultant were specifically apprised of the many years of sexual assaults she had suffered as a child during their investigation of her complaint, which heightened her vulnerability to the assaults she suffered by Defendant Dickerson, yet chose to subject her to continuous contact with her assailant by allowing him to enter the Bank at will.

60.  Further, Defendant Johns and Ms. Thomas took it upon themselves, after the termination of the Defendant Dickerson, to appear on behalf of the Defendant Bank to support him and oppose the Plaintiff's efforts to obtain a restraining order for her protection, as recommended by the Chief of Police. Ms. Thomas testified that the Plaintiff was not assaulted, but that her assailant merely bumped into her. Acting as an alter-ego of the Bank, Defendant Johns vouched for the Defendant Dickerson's character. These patently false and misleading statements by the Defendant Bank were deliberately and intentionally calculated to inflict further severe emotional harm upon the Plaintiff.

61.  The actions of the Defendants, and all of them, have resulted in emotional distress to the Plaintiff that is so severe that no reasonable person could be expected to endure it.

62.  As a direct and proximate result of the extreme and outrageous conduct of all of the Defendants, the Plaintiff has been damaged and is entitled to recover actual damages and punitive damages against these Defendants.

## FOURTH CAUSE OF ACTION
### False Imprisonment
### (As to Defendant Dickerson)

63. The Plaintiff re-alleges and incorporates each and every allegation set forth above.

64. The Defendant Dickerson's intentional conduct of forcefully restraining Plaintiff during his sexual assaults on Plaintiff unlawfully deprived Plaintiff of her liberty without consent, authorization, or justification.

65. During the August 17, 2016 assault, the Defendant Dickerson physically restrained the Plaintiff through force by pinning her against a door during the assault, thereby initially preventing Plaintiff from freeing herself from this attack.

66. The Defendant Dickerson restrained Plaintiff with the intent of causing Plaintiff's confinement.

67. There was no lawful basis for Defendant Dickerson's restraint and confinement of Plaintiff.

68. Said restraint was against Plaintiff's will, unreasonable in time and manner, and constituted an unlawful false imprisonment and restraint of Plaintiff's liberty.

69. As a direct and proximate result of Defendant Dickerson's conduct, the Plaintiff has suffered and continues to suffer severe emotional and mental distress, embarrassment, humiliation, pain and suffering, loss of enjoyment of life, and other non-pecuniary losses and is therefore entitled to actual and punitive damages.

## FIFTH CAUSE OF ACTION
### Battery
### (As to Defendant Dickerson)

70. The Plaintiff re-alleges and incorporates each and every allegation set forth above.

71. The facts set forth herein demonstrate that the Plaintiff suffered the infliction of an unlawful, unauthorized forcible contact on her person which was not legally consented to by her nor otherwise privileged.

72. As a direct and proximate result of Defendant Dickerson's conduct, the Plaintiff has suffered and continues to suffer severe emotional and mental distress, embarrassment, humiliation, pain and suffering, loss of enjoyment of life, and other non-pecuniary losses and is therefore entitled to actual and punitive damages.

## SIXTH CAUSE OF ACTION
### Assault and Battery
### (As to Defendant Dickerson)

73. The Plaintiff re-alleges and incorporates each and every allegation set forth above.

74. The facts set forth herein demonstrate that the Defendant Dickerson placed the Plaintiff in reasonable fear of immediate harmful or offensive contact with her person.

75. The facts set forth herein demonstrate that the Plaintiff suffered the infliction of an unlawful, unauthorized forcible contact on her person by Defendant Dickerson which was not legally consented to by her or otherwise privileged.

## PRAYER FOR RELIEF

**WHEREFORE,** the Plaintiff, Mary Wilson, having complained of Defendants, prays that she be awarded judgment against the Defendants as follows:

1. All relief available under the claims pled herein, including but not limited to, an appropriate amount of back wages, bonuses and benefits to be established at trial, front pay in lieu of reinstatement, compensatory damages, actual and exemplary damages, punitive damages, pre-judgment interest;

2. Attorney's fees and costs;

3.  Any and all further relief as appears just and proper to this Court.

**PLAINTIFF DEMANDS A TRIAL BY JURY.**

**GIBBS & HOLMES**

By:   s/ Allan R. Holmes
     Allan R. Holmes (Fed ID # 1925)
     Cheryl H. Ledbetter (Fed. ID # 11446)
     171 Church Street, Suite 110
     Charleston, SC 29401
     (843) 722-0033
     aholmes@gibbs-holmes.com

**ATTORNEYS FOR PLAINTIFF**

June 14,  2017

Charleston, South Carolina